IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



VANCE BALLEW, §
 §
 Plaintiff, §
 §
VS. § NO. 4:11-CV-030-A
 §
AMERICA'S SERVICING COMPANY, §
ET AL., §
 §
 Defendants. §

MEMORANDUM OPINION
and
ORDER

After having considered the amended notice of removal filed March 4, 2011, by defendants, America's Servicing Company ("ASC") and Wells Fargo Bank, N.A. ("Wells Fargo"), defendants' memorandum of law in support of the amended notice of removal, the pleading by which this action was initiated in state court, and applicable legal authorities, the court has concluded that the action should be remanded to the state court from which it was removed.

I.

Nature of the Action

A. Plaintiff's Pleading

This action was initiated on December 31, 2010, in the District Court of Tarrant County, Texas, 141st Judicial District,

by the filing by plaintiff, Vance Ballew, of his Original Petition and Application for Temporary Restraining Order and Temporary Injunction.

In the petition, plaintiff alleged that he is the owner of record of real property located at 11833 Moorhen Circle, Fort Worth, Texas (the "property"); he signed two deeds of trust on the property in 2004 to secure payment of two promissory notes made by him to Summit Mortgage Corporation; he recently received correspondence from ASC threatening to foreclose on the property; and the notice of acceleration and notice of trustee's sale showed Wells Fargo as the trustee. Plaintiff alleged as liability facts that ASC made material misrepresentations to him regarding its ability to accept mortgage payments and the amount owing on the mortgage, and that Wells Fargo threatened to foreclose despite being unable to prove that it is the holder of the notes.

Plaintiff asserted causes of action against defendants for fraud, wrongful debt collection practices, and violations of the Deceptive Trade Practices - Consumer Protection Act. He prayed for economic and punitive damages; reasonable attorney's fees; costs of court; a declaration that defendants must produce the original promissory notes signed by plaintiff before attempting to foreclose on the property; and a temporary restraining order,

temporary injunction, and permanent injunction preventing defendants from selling the property during the pendency of this action, taking the property, or "otherwise disturbing or attempting to disturb Plaintiff's peaceable possession [and] enjoyment of the property." Notice of Removal, Ex. B-2 at 14.

B.  The Notice of Removal

Defendants removed the action to this court by filing a notice of removal on January 13, 2011. The notice of removal asserted that the court has subject matter jurisdiction because of complete diversity of citizenship between plaintiff and defendants and an amount in controversy exceeding the sum or value of $75,000, exclusive of interest and costs.[1] See 28 U.S.C. § 1332(a). As to the amount in controversy, the notice alleged that:

> Because Plaintiff seeks relief that would prevent Defendants from obtaining possession of the Property, the amount in controversy is the value of the Property. According to the Tarrant County Central Appraisal District, the Tarrant County tax rolls show the current market value of the Property is $184,800.00, well above the $75,000.00 limit for removal. See Exhibit C.

Notice of Removal at 5.

---

[1] The notice alleged that plaintiff is a citizen of Texas and defendants are citizens of South Dakota.

A print-out, purportedly from the Tarrant Appraisal District, showing the market value of the property as $184,800, was attached to the notice of removal as an exhibit.

C. Post-Removal Events

On February 23, 2011, the court entered an order stating that the allegations in the notice of removal were insufficient to establish the amount in controversy because "the value of the property is not necessarily equal to the value of plaintiff's interest in the property." Feb. 23, 2011, Order at 2-3. The order gave defendants a deadline by which to file an amended notice of removal, together with supporting documentation, showing that the amount in controversy exceeds the jurisdictional amount.

Defendants filed their amended notice of removal on March 4, 2011. The allegations in the amended notice of removal relative to the amount in controversy were more or less identical to those in the original notice of removal; however, defendants also filed a memorandum of law containing arguments and authorities in support of their position that the value of the property, not the value of plaintiff's interest in the property, is the appropriate measure of the amount in controversy.

II.

## General Principles Governing Removal and Jurisdiction Under § 1332

28 U.S.C. § 1441(a) provides, in pertinent part, that:

> [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

"The removing party bears the burden of showing that federal subject matter jurisdiction exists and that removal was proper." Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002). "Moreover, because the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns, which mandate strict construction of the removal statute." Carpenter v. Wichita Falls Indep. Sch. Dist., 44 F.3d 362, 365-66 (5th Cir. 1995). Any doubts about whether removal jurisdiction is proper must therefore be resolved against the exercise of federal jurisdiction. Acuna v. Brown & Root Inc., 200 F.3d 335, 339 (5th Cir. 2000).

For diversity jurisdiction to exist, there must be complete diversity of citizenship between the parties, and the amount in controversy must exceed the sum or value of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). To determine the

5

amount in controversy, the court ordinarily looks to the plaintiff's state court petition. <u>Manguno</u>, 276 F.3d at 723. If it is not facially apparent from the petition that the amount in controversy exceeds the required amount, the removing party must set forth summary judgment-type evidence, either in the notice of removal or in an affidavit, showing that the amount in controversy is, more likely than not, greater than $75,000. <u>Id.</u>; <u>Allen v. R & H Oil & Gas Co.</u>, 63 F.3d 1326, 1335 (5th Cir. 1995).

The amount in controversy is measured from the perspective of the plaintiff. In an action for declaratory or injunctive relief, the amount in controversy is the "value of the object of the litigation." <u>Leininger v. Leininger</u>, 705 F.2d 727, 729 (5th Cir. 1983). It is also "the value of the right to be protected or the extent of the injury to be prevented." <u>Id.</u>

III.

<u>Analysis</u>

Plaintiff's state court petition did not make a demand for a specific amount of damages. The amount in controversy is not otherwise facially apparent from petition. Therefore, defendants bear the burden to present summary judgment-type evidence showing that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

Defendants have not presented the court with any evidence as to the amount of damages plaintiff is seeking for defendants' alleged fraud, wrongful debt collection, and DTPA violations. The only evidence defendant has adduced relevant to the amount in controversy is a copy of a document purportedly generated by the Tarrant Appraisal District showing the fair market value of the property to be $184,800.[2] Thus, defendants' contention that the amount in controversy exceeds the jurisdictional threshold depends entirely on whether they are correct that the value of the declaratory and injunctive relief sought by plaintiff is equal to the fair market value of the property. After carefully studying the authorities cited by defendants on that point, the court is convinced that the value of the declaratory and injunctive relief sought by plaintiff is not equal to the value of the property.

Plaintiff seeks a declaration that defendants "must produce the one and only Original Promissory Note signed by the Plaintiff for inspection by the Plaintiff and or their [sic] document examiner prior to proceeding with any foreclosure proceedings." Notice of Removal, Ex. B-2 at 14. The value of such a declaration is not the value of the property, it is the value to

---

[2] The court notes that the document relied on by defendants to establish the amount in controversy is not authenticated, and, therefore, is not "summary judgment-type" evidence.

plaintiff of being able to inspect the original promissory notes prior to foreclosure. Neither the petition, nor any evidence adduced by defendant indicates what that value might be.

Nor does the value of the injunctive relief sought by plaintiff equate to the value of the property. Plaintiff seeks to prevent defendants from "executing a Substitute Trustee's Sale or otherwise selling or taking possession of the property <u>during the pendency of this cause</u>, or from otherwise disturbing or attempting to disturb Plaintiff's peaceable possession and enjoyment of the property." <u>Id.</u> at 13-14 (emphasis added). In other words, plaintiff seeks to temporarily delay foreclosure proceedings until the merits of this lawsuit are decided. The value of such a delay is not the value of the property, it is the value to plaintiff of postponing foreclosure until he can determine through this suit whether defendants are entitled to foreclose. Again, defendants have not provided any evidence as to what the value to plaintiff of such a temporary delay might be.

In their memorandum of law in support of the amended notice of removal, defendants cite several recent district court decisions holding that the amount in controversy in a case where the plaintiff seeks to enjoin foreclosure of real property is the value of the property. <u>See, e.g.</u>, <u>Azzam v. Wells Fargo Bank,</u>

N.A., No. H-10-4616, 2011 WL 149350 (S.D. Tex. Jan. 18, 2011); Griffin v. HSBC Bank USA, No. 3:10-CV-728-L, 2010 WL 4781297, (N.D. Tex. Nov. 24, 2010).[3] Several of those decisions rely on for their holdings the Fifth Circuit's opinion in Waller v. Professional Insurance Corporation, 296 F.2d 545 (1961).

Waller was a diversity action brought by an insured against his insurer seeking declaratory and injunctive relief with respect to a single-premium insurance policy with a face amount of $50,000 that the plaintiff had purchased from the defendant. Id. at 546-47. The plaintiff borrowed nearly $23,000 from the defendant to finance his payment of the premium, and signed a policy loan note promising to repay the loan, with interest at a rate of 4%. Id. at 546. Payment of the note was secured by the policy, which, unbeknownst to the parties, contained a provision stating that the interest rate on the note was 5%. Id. Plaintiff paid 4% interest on the note for twelve years, until state officials notified the defendant of the discrepancy in interest rates and called upon it to collect the back interest. Id. The defendant wrote the plaintiff demanding that he pay $3,835.63. Id. The plaintiff sued, seeking declaratory and

---

[3]Defendants neglected to cite district court decisions holding that the amount in controversy in a case such as this one is not the value of the property. See, e.g., James v. U.S. Bank Nat'l Ass'n, No. 3:09-CV-247-MHT, 2009 WL 2170045 (M.D. Ala. July 17, 2009); Carstarphen v. Deutsche Bank Nat'l Trust Co., No. 08-0511-WS-M, 2009 WL 1537861 (S.D. Ala. June 1, 2009); Sanders v. Homecomings Fin., LLC, No. 2:08-CV-369-MEF, 2009 WL 1151868 (M.D. Ala. April 29, 2009).

injunctive relief preventing the defendant from collecting the back interest or making a claim against him for interest at any other rate than 4%. <u>Id.</u> at 547.

The district court dismissed the action for lack of subject matter jurisdiction, stating that the amount in controversy was the difference between the 4% interest actually collected and the 5% interest the insurer sought to collect, which was far below the $10,000 threshold for federal jurisdiction. <u>Id.</u> The Fifth Circuit reversed. <u>Id.</u> It held that <u>because the relief sought by the plaintiff required adjudication of the legal effect of the insurance policy and the policy loan, the value of those agreements determined the amount in controversy</u>. <u>Id.</u> The court buttressed its conclusion with the following reasoning:

> [C]ourts look to the value of the property involved rather than the damages that might be suffered, to determine the jurisdictional amount in suits for injunctions, in suits for specific performance of a contract to convey realty, and in suits to remove a cloud from the title of realty [citing cases]. . . . Underlying these cases is the principle that <u>when the validity of a contract or a right to property is called into question in its entirety, the value of the property controls the amounts in controversy</u>.

<u>Id.</u> at 547-48 (emphasis added). Defendants cite the emphasized language within the quotation as support for their assertion that the value of the property involved is the appropriate measure of the amount in controversy.

10

Although the above language, if read without context, seems to support the defendants' argument, the court finds <u>Waller</u> factually distinguishable from the instant action. In <u>Waller</u>, the Fifth Circuit found that the value of the insurance policy and policy loan note determined the amount in controversy because the plaintiff's complaint challenged the validity of those agreements. <u>Id.</u> at 547. Here, plaintiff is not challenging the validity of the notes or deeds of trust; rather, he merely disputes that defendants are the ones having the right to enforce those documents. In other words, "the validity of a contract or a right to property" is not being "called into question in its entirety." <u>Id.</u> Thus, the language in <u>Waller</u> does not compel the conclusion that the amount in controversy in this action is the value of the property.

Moreover, the court notes that the statement in <u>Waller</u> that "courts look to the value of the property involved rather than the damages that might be suffered, to determine the jurisdictional amount in suits for injunctions," <u>id.</u>, seems to be in tension with the principle, established in the Fifth Circuit long before <u>Waller</u>, that the amount in controversy is determined from the perspective of the plaintiff. See <u>Vraney v. County of Pinellas</u>, 250 F.2d 617, 618 (5th Cir. 1958) (per curiam); <u>see</u>

also <u>Garcia v. Koch Oil Co. of Tex. Inc.</u>, 351 F.3d 636, 640 n.4 (5th Cir. 2003).

To sum up, defendants have not shown by a preponderance of the evidence that the value to plaintiff of the requested declaratory and injunctive relief exceeds $75,000, exclusive of interest and costs. Therefore, the court lacks subject matter jurisdiction over the action, and it should be remanded to the state court from which it was removed.

IV.

Order

For the reasons given above,

The court ORDERS that this action be, and is hereby, remanded to the state court from which it was removed.

SIGNED March 14, 2011.

_____
JOHN McBRYDE
United States District Judge